IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 23-30246 |
| Bourbon Street LLC, | ) | Chapter 11 – Subchapter V |
| d/b/a La Cantina, et al. | ) | |
| | ) | |
|     Debtors, Jointly Administered. | ) | |
| _____ | ) | |
| | ) | |
| Bourbon Street LLC | ) | |
| | ) | Adversary Case No. 23-07012 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Byzfunder NY LLC d/b/a Byzfunder | ) | |
| | ) | |
|     Defendant. | ) | |

**COMPLAINT**

Comes now Bourbon Street LLC ("Bourbon Street" or the "Debtor"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7003 and Federal Rule of Civil Procedure 3, and as and for its complaint (the "Complaint") against Byzfunder NY LLC d/b/a Byzfunder ("BNL" or the "Defendant") states as follows:

**Introduction**

1.    On July 21, 2023, BNL agreed to send $28,825.00 to the Debtor, in exchange for the Debtor agreeing to pay BNL $41,100.00 over a period of approximately 32 weeks. At first blush, this would appear to be a loan with a gross interest rate of 42.5% and an effective annual interest rate of 69.2%. But BNL asserts the transaction is not a loan, as evidenced by the words "Merchant is selling a portion of a future revenue stream to PURCHASER at a discount, and is not borrowing money from PURCHASER" appearing in bolded font on the first page of the underlying agreement (the "Agreement").

1

2. The aggressive disclaimer is neither coincidence nor folly; the transaction in question is a so-called "merchant cash advance" (an "MCA"), a variety of commercial funding that has come into vogue of late, proving every bit as toxic to small businesses as so-called payday loans have become to consumers.

3. The theory of an MCA is relatively simple: the funds being tendered to a small business are not a loan (which would implicate uncomfortable questions about the application of various states' usury laws) but, rather, the proceeds of an advanced purchase of future receivables.

4. An MCA has myriad optical resemblances to a loan but, per the governing document's express terms, is instead characterized as a simple sales transaction.

5. Notably, MCA agreements are akin to factoring agreements only insofar as community banks are akin to loan sharks; the premium charged under MCA contracts dwarfs that of traditional factors, while MCA agreements seek to impact *all* future receivables of a company in contrast to the sale of specifically-identified (and contemporaneously extant) receivables that ordinarily underly a factoring agreement.

6. Too often, the only way for a small business to survive the repayment rigors of an MCA agreement is to enter into a new MCA agreement, just as consumers take out one payday loan to satisfy the obligations attendant to the last payday loan; increasingly, the oft-vicious cycle of MCA debt is driving small businesses to seek relief under Title 11 of the United States Code, and such is very much what happened here.

7. Bourbon Street accordingly now brings suit against BNL, proceeding under the very theory asserted by BNL: the transaction in question ought not be characterized as a loan but, rather, as a sale of future receivables. If so, the transaction is a textbook fraudulent conveyance, as Bourbon Street – being insolvent at all times relevant – bargained away $41,100.00 in future

receivables for $28,825.00, a sum of money that does not even vaguely approximate reasonably equivalent value.

8. To be sure, another ill is afoot *sub judice*: BNL appears to have run roughshod over the automatic stay set forth in Section 362 of Title 11 of the United States Code, endeavoring to garnish Bourbon Street's credit card processor post-petition. But at core, this suit is intended to follow in the steps of the adversary complaint filed by Gannett Peak, LLC against another MCA operator, transparently aiming to reveal the predatory nature of the MCA industry while also having the underlying transaction properly deemed a fraudulent conveyance avoidable under both state and federal law.

## Parties

9. Bourbon Street is a North Dakota limited liability company and a debtor-in-possession, having petitioned for relief under Section 301 of Title 11 of the United States Code on July 29, 2023.

10. BNL is a New York limited liability company formed in Nassau County but appearing to operate out of New York County.

11. BNL is not registered to conduct business in the State of North Dakota.

## Jurisdiction and Venue

12. This Honorable Court enjoys jurisdiction over the instant proceeding, pursuant to the allowances of Section 157(b)(2)(A, H, O) of Title 28 of the United States Code, as this case concerns the administration of the Debtor's estate, an effort to recover a fraudulent conveyance, and the adjustment of the debtor-creditor relationship.

13. Venue is properly laid in this Honorable Court pursuant to the allowances of Section 1334 of Title 28 of the United States Code, as this matter relates to a proceeding under Title 11 of the United States Code.

**General Allegations**

14. Bourbon Street is in the business of operating a Tex Mex-themed restaurant and bar in Grand Forks, North Dakota, serving members of the local community and collecting revenues through the sale of food and beverages.

15. Needing cash to sustain its operations, Bourbon Street entered into the Agreement, with BNL, on July 21, 2023. *See* Agreement, attached hereto as Exhibit A.

16. Per the Agreement, BNL is to fund $28,825.00 to Bourbon Street, *see* Agreement, Exhibit A, at p. 1, in exchange for Bourbon Street diverting $41,100.00 in future receivables to BNL through payments of $1,284.38 per week, *id.*

17. The Agreement was drafted by BNL and, in addition to proclaiming the transaction to not be a loan in the manner referenced *supra*, provides, *inter alia*, "Merchant and [BNL] agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from [BNL] to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts." *Id.* at p. 2, § 1.5.

18. Despite the repetitive internal denials of lending activity, BNL recorded a UCC-1 lien to secure its claim against Bourbon Street's various receivables (the "Financing Statement").

19. The Financing Statement is, and at all times has been, ineffective, as the whole of Bourbon Street's assets are encumbered by an obligation to Choice Financial Group, as memorialized by a UCC-1 lien properly filed before the Agreement was entered into with BNL.

4

20. BNL was given notice of the Debtor's bankruptcy at the time of its filing, through notice being sent to Byzfunder Funding LLC, an entity that, upon information and belief, is an affiliate of BNL, that shares a registered agent with BNL, and that appears to have been formed by the same law firm (Culhane Meadows LLC) as BNL.

21. Notwithstanding its receipt of constructive notice of this case, on or about August 28, 2023, BNL served a garnishment on Shift4 Payments, Inc. ("Shift4"), the credit card processor used by Bourbon Street, in an effort to garnish the whole of Bourbon Street's credit card sales for a post-petition period of time.

22. Bourbon Street was compelled to have its general reorganization counsel contact the legal department for Shift4, send a formal correspondence urging Shift4 to not comply with the garnishment, and provide formal proof of this bankruptcy, in order for Bourbon Street to be disbursed several days of credit card sales that were being held pursuant to the garnishment of BNL.

### Count I – Fraudulent Conveyance (11 U.S.C. § 548)

23. Bourbon Street repeats and realleges paragraphs 1-22 of this Complaint, as though fully set forth herein.

24. In paying $28,825.00 for the acquisition of $41,100.00 in future revenues of the Debtor, BNL did not afford reasonably equivalent value to Bourbon Street.

25. Specifically, since BNL was not purchasing any identified receivable or collection of receivables but, rather, a portion of *all* future receivables of the Debtor, BNL did not undertake any cognizable risk of the Debtor's customers not paying their correlative obligations.

26. Indeed, since the Debtor is a restaurant/bar, and its "receivables" are comprised of the funding of credit card payments tendered by diners/consumers, BNL did not undertake any

5

cognizable risk of the Debtor not collecting the promised sum of $1,284.38 in revenues each week for a series of approximately 32 weeks.

27. As BNL was aware at all times relevant, the Debtor has always collected more than $1,284.38 in revenues per week (since the incipiency of the Debtor's public-facing operations) and, as such, was virtually assured of receiving 100% of the monies pledged to BNL.

28. This accordingly created a paradigm where BNL was not purchasing risk or offering a modestly-discounted purchase price for future revenues so as to account for the net present value of money; this was, rather, a situation whereby BNL was purchasing an assured sum of $41,100.00 – payable in equal installments, over roughly 32 weeks – for just over 70 cents on the dollar.

29. At the time of entering into this transaction, Bourbon Street (i) was unable to pay its debts as they came due (hence the need to obtain money from BNL); and (ii) had total liabilities that exceeded its total assets, thereby rendering Bourbon Street insolvent.

30. Even if, *arguendo*, Bourbon Street was not insolvent at the time it entered into the Agreement, Bourbon Street was rendered insolvent (or, as it is, further insolvent) by virtue of the obligation assumed in the Agreement.

WHEREFORE, Bourbon Street respectfully prays this Honorable Court (i) avoid the Debtor's obligations under the Agreement; (ii) avoid the UCC-1 filing of BNL together with any other security interest, perfected or inchoate, of BNL; and (iii) afford such other and further relief as may be just and proper.

**Count II – Uniform Voidable Transactions Act (N.D. Cent. Code § 13-02.1, *et seq.*)**

31. Bourbon Street repeats and realleges paragraphs 1-22 of this Complaint, as though fully set forth herein.

32. Bourbon Street was insolvent, within the definition afforded by Section 13-02.1-02 of the North Dakota Century Code, at the time Bourbon Street entered into the Agreement with BNL.

33. Bourbon Street repeats and realleged paragraphs 24-28 of this Complaint, as though fully set forth herein, and submits the same allege the Agreement to have not afforded reasonably equivalent value to Bourbon Street.

34. Pursuant to Section 13-02.1-11 of the North Dakota Century Code, the claims set forth in this Count II are governed by North Dakota law, notwithstanding a New York choice of law provision in the Agreement.

WHEREFORE, Bourbon Street respectfully prays this Honorable Court (i) avoid the Debtor's obligations under the Agreement, pursuant to Section 544 of Title 11 of the United States Code and Section 13-02.1-04 of the North Dakota Century Code; (ii) avoid the Debtor's obligations under the Agreement, pursuant to Section 544 of Title 11 of the United States Code and Section 13-02.1-05 of the North Dakota Century Code; (iii) avoid the UCC-1 filing of BNL together with any other security interest, perfected or inchoate, of BNL, pursuant to Section 544 of Title 11 of the United States Code and Section 13-01.1-07 of the North Dakota Century Code; and (iv) afford such other and further relief as may be just and proper.

### Count III – Violation of the Automatic Stay (11 U.S.C. § 362)

35. Bourbon Street repeats and realleges paragraphs 1-22 of this Complaint, as though fully set forth herein.

36. By endeavoring to garnish the credit card proceeds of Bourbon Street's sales, post-petition, BNL undertook an "act to … exercise control over property of the estate," in contravention of Section 362 of Title 11 of the United States Code.

7

37. By endeavoring to garnish the credit card proceeds of Bourbon Street's sales, post-petition, BNL undertook an act to "perfect, or enforce against property of the debtor [a] lien to the extent that such lien secures a claim that arose before the commencement of the case" at bar, in contravention of Section 362 of Title 11 of the United States Code.

38. BNL was on constructive notice of this bankruptcy proceeding at the time it endeavored to garnish the credit card proceeds of Bourbon Street's sales, with an affiliate of BNL having been given actual notice of this case several weeks prior.

39. The Debtor has suffered actual damages as a result of this violation of Section 362 of Title 11 of the United States Code, inasmuch as the Debtor has been forced to direct its counsel to interface with Shift4 to resume the ordinary distribution of credit card proceeds to the Debtor and, as such, incurred legal fees that are an administrative obligation of the Debtor's estate (or that will become such an obligation once a fee application is filed and granted); for the avoidance of ambiguity, several days of proceeds were withheld, per the putative garnishment, before the Debtor was compelled to involve its counsel in the matter.

WHEREFORE, Bourbon Street respectfully prays this Honorable Court (i) enter judgment against BNL, and in favor of Bourbon Street, in a sum equal to the damages sustained by Bourbon Street on account of BNL's violation of Section 362 of Title 11 of the United States Code; and (ii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

|  |  |  |
|---|---|---|
|  |  | Respectfully submitted, |
| Dated: September 2, 2023 | By: | /s/ Maurice B. VerStandig |
|  |  | Maurice B. VerStandig, Esq. |
|  |  | The Dakota Bankruptcy Firm |
|  |  | 1630 1st Avenue N |
|  |  | Suite B PMB 24 |
|  |  | Fargo, North Dakota 58102-4246 |
|  |  | Phone: (701) 394-3215 |
|  |  | mac@dakotabankruptcy.com |
|  |  | *Counsel for the Debtor* |