# BYZFUNDER

## REVENUE PURCHASE AGREEMENT

This Revenue Purchase Agreement and Security Agreement and Guaranty of Performance ("Agreement") dated 07/21/2023 between Byzfunder NY LLC DBA Byzfunder located at 530 7th Ave Suite 505, New York, NY 10018 ("PURCHASER") the Merchant(s) listed below ("**Merchant**") and the Individual(s) listed below (each a "**Guarantor**")

### MERCHANT INFORMATION

| | |
|---|---|
| Merchant's Legal Name: | Bourbon Street LLC |
| D/B/A: | La Cantina Tex-Mex Cuisine |
| State of Incorporation / Organization: | ND |
| Type of Entity: | Limited Liability Company |
| Physical Address: | 28 Center Avenue North |
| City: | Mayville |
| State: | ND |
| Zip: | 58257 |
| Business Phone: | 701-739-0064 |
| Guarantor(s) Name: | Mark Douglas Petri |
| Cellphone Number: | |
| Email Address: | markdpetri@gmail.com |
| Mailing Address: | PO Box #531 |
| City: | Mayville |
| State: | ND |
| Zip: | 58257 |

**Purchase Price:** $30,000.00     **Purchased Percentage:** 3.00%     **Purchased Amount:** $41,100.00

**Remittance Frequency:** Weekly     **Initial Remittance:** $1,284.38

**Origination Fee:** $900.00     **Processing Fee:** $275.00
(Deducted from Purchase Price)     (Deducted from Purchase Price)

**Net Amount Funded to Merchant: $28,825.00**

In consideration of payment by PURCHASER to Merchant of the Purchase Price set forth above, Merchant hereby sells, assigns and transfers to PURCHASER (making PURCHASER the absolute owner) the Purchased Percentage of all of Merchant's payments, receipts, settlements and funds paid to or received by or for the account of Merchant from time to time on and after the date hereof in payment or settlement of Merchant's existing and future accounts, payment intangibles, credit, debit and/or stored value card transactions, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other payors or obligors (the "Future Receipts" defined as all payments made by cash, check, clearinghouse settlement, electronic transfer or other form of monetary payment), for the payments to Merchant as a result of Merchant's sale of goods and/or services until the Purchased Amount has been delivered by or on behalf of Merchant to PURCHASER.

**Merchant is selling a portion of a future revenue stream to PURCHASER at a discount, and is not borrowing money from PURCHASER, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by PURCHASER. The Initial Remittance is a good faith estimate of PURCHASER's share of the future revenue stream. Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables does not constitute a breach of this Agreement.** PURCHASER is entering this Agreement knowing the risks that Merchant's business may not perform as expected or fail, and PURCHASER assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give PURCHASER a reasonable and fair opportunity to receive the benefit of its bargain. PURCHASER acknowledges that it may never receive the Purchased Amount in the event that the Merchant does not generate sufficient revenue. Merchant and Guarantor(s) are only guaranteeing their performance of the terms of this Revenue Purchase Agreement, and are not guaranteeing the payment of the Purchased Amount. The Initial Remittance shall be as described above and is subject to adjustment as set forth in Section 1.3.

PURCHASER will debit the Remittance each business day from only one depositing bank account, which account must be acceptable to, and pre-approved by, PURCHASER (the "Account") into which Merchant and Merchant's customers shall remit the Receipts from each transaction. Merchant hereby authorizes PURCHASER to ACH debit the agreed Remittance from the Account on the agreed upon Remittance Frequency; a daily basis means any business day that is not a United States banking holiday.

PURCHASER'S payment of the Purchase Price shall be deemed the acceptance and performance by PURCHASER of this Agreement. A list of all fees applicable under this Agreement is contained in Appendix A.

**THE "MERCHANT AGREEMENT TERMS AND CONDITIONS", AND THE "SECURITY AGREEMENT AND PERFORMANCE GUARANTY", ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS AGREEMENT.**

**FOR THE MERCHANT (#1)** By: _Mark Douglas Petri, Member_     _[Signed]_
(Print Name and Title)     (Signature)

**FOR THE MERCHANT (#2)** By: _____
(Print Name and Title)     (Signature)

**BY GUARANTOR(S) (#1)** By: _Mark Douglas Petri, Member_     _[Signed]_
(Print Name and Title)     (Signature)

**BY GUARANTOR(S) (#2)** By: _____
(Print Name and Title)     (Signature)

Initial(s): _[MDP]_ Merchant     _[MDP]_ Guarantor #1     _____ Guarantor #2

BYZFUNDER     Rev. 10/2022

<u>**MERCHANT AGREEMENT TERMS AND CONDITIONS**</u>

**1   TERMS OF ENROLLMENT IN PROGRAM**

**1.1   <u>Merchant Deposit Agreement and Processor</u>.** Merchant shall (A) if applicable, execute an agreement acceptable to PURCHASER with a Bank acceptable to PURCHASER to obtain electronic fund transfer services for the Account, and (B) if applicable, execute an agreement acceptable to PURCHASER with a credit and debit card processor (the "Processor") instructing the Processor to deposit all Receipts into the Account. Merchant shall provide PURCHASER and/or its authorized agent(s) with all of the information and authorizations necessary for verifying Merchant's receivables, receipts, deposits and withdrawals into and from the Account. Merchant hereby authorizes PURCHASER and/or its agent(s) to withdraw from the Account via ACH debit the amounts owed to PURCHASER for the receipts as specified herein and to deliver such amounts to PURCHASER. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Merchant for these deposits.

**1.2   <u>No Fixed Term of Agreement</u>.** The term of this Agreement is indefinite and shall continue the entire Purchased Amount and any other amounts due are received by PURCHASER as per the terms of this Agreement, or earlier if terminated pursuant to any provision of this Agreement.

**1.3   <u>Reconciliation and Changes to the Remittance Amount.</u>** The Initial Remittance amount is intended to represent the Purchased Percentage of Merchant's daily Future Receipts. At any time, Merchant or PURCHASER may request a reconciliation to the Remittance amount to more closely reflect the Merchant's actual Future Receipts times the Purchased Percentage. Any reconciliation request by Merchant must be: (A) in writing; (B) include a copy of Merchant's most recent month's bank statement and Merchant's month-to date banking information (the "Reconciliation Documentation"); and (C) be sent to PURCHASER by e-mail at: **reconciliations@byzfunder.com**. Within four days of PURCHASER's reasonable verification of the Reconciliation Documentation, PURCHASER shall adjust the Remittance amount on a going-forward basis. The adjusted Remittance amount will be based on Merchant's actual Future Receipts times the Purchased Percentage. Following this adjustment, the Remittance amount will be in the same amount until a subsequent adjustment. If PURCHASER requests a reconciliation, Merchant shall provide Reconciliation Documentation within seven calendar days of PURCHASER'S request. If Merchant fails to provide requested Reconciliation Documentation within seven calendar days, PURCHASER may adjust the Remittance amount to the Initial Remittance amount.

**1.4   <u>Transactional History</u>.** Merchant authorizes all of its banks, brokers and processor to provide PURCHASER with Merchant's banking, brokerage and/or processing history to determine qualification in this program and for collections purposes, if necessary. Merchant shall provide PURCHASER with copies of any documents reasonably related to Merchant's card processing activity or Future Receipts within five (5) business days after a request from PURCHASER.

**1.5   <u>Sale of Receipts.</u> Merchant and PURCHASER agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from PURCHASER to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts.** PURCHASER has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Merchant acknowledges that PURCHASER's share of Receipts collected are being held by Merchant in trust and are the sole property of PURCHASER until they are remitted to PURCHASER. Payments made to PURCHASER in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment by Merchant's customers. By this Agreement, Merchant transfers to PURCHASER full and complete ownership of the Purchased Amount and Merchant retains no legal or equitable interest therein. PURCHASER hereby appoints Merchant, and Merchant accepts appointment, as servicer for and on behalf of PURCHASER for the purpose of collecting and delivering Receipts to PURCHASER as required by this Agreement. Merchant agrees that it will treat the amounts received and the Purchased Receipts delivered to PURCHASER under this Agreement in a manner consistent with a sale in its accounting records and tax returns.

**1.6   <u>Credit Report and Other Authorizations</u>**. Merchant and each of the Guarantors authorize PURCHASER, its agents and representatives and any credit reporting agency engaged by PURCHASER, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of the Guarantors for the purpose of this Agreement; (ii) obtain consumer and business credit reports on the Merchant and any Guarantors; and (iii) to contact personal and business references provided by Merchant in any application, at any time now or for so long as Merchant and/or Guarantors continue to have any obligations to PURCHASER as a consequence of this Agreement or for PURCHASER'S ability to determine Merchant's eligibility to enter into any future agreement with PURCHASER.

**2   REPRESENTATIONS, WARRANTIES AND COVENANTS**

Merchant represents warrants and covenants that, as of this date and, unless otherwise stated, during the course of this Agreement:

2.1   <u>Financial Condition and Financial Information</u>. Merchant's bank and financial statements, copies of which have been furnished to PURCHASER, and future statements which will be furnished hereafter at the request of PURCHASER, fairly represent the financial condition of Merchant at such dates. PURCHASER may request bank statements and month-to-date bank activity information at any time during the performance of this Agreement and Merchant shall provide them to PURCHASER within five (5) business days after request from PURCHASER. Merchant's failure to do so is a material breach of this Agreement.

2.2   <u>Governmental Approvals</u>. Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

2.3   <u>Authorization</u>. Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

2.4   <u>Use of Funds</u>. Merchant agrees that it shall use the Purchase Price for business purposes and not for personal, family, or household purposes.

2.5   <u>No Diversion of Future Receipts.</u> Merchant will deposit all Future Receipts in the Account and will not revoke authorization for PURCHSER to debit the Account, change the Processor, add processing terminals, change its financial institution or bank account(s), without PURCHASER's prior written consent. Any such changes shall be a material breach of this Agreement.

2.6   <u>Change of Name or Location</u>. Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and PURCHASER, nor shall Merchant change any of its places of business without prior written consent by PURCHASER.

2.7   <u>Daily Batch Out</u>. Merchant will batch out receipts with the Processor on a daily basis if applicable.

2.8   <u>Estoppel Certificate</u>. Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from PURCHASER to Merchant, execute, acknowledge and deliver to PURCHASER and/or to any other person, firm or corporation specified by PURCHASER, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating

**BYZFUNDER**

Initial(s): [signature]  [signature]
Merchant    Guarantor #1    Guarantor #2

Rev.10/2022

the dates which the Purchased Amount or any portion thereof has been delivered.

2.9 **Bankruptcy.** As of the date of this Agreement, Merchant does not contemplate filing for bankruptcy in the next six months and has not consulted with a bankruptcy attorney or filed any petition for bankruptcy protection pursuant to the United States Bankruptcy Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that, as of the date of this Agreement, it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

2.10 **Unencumbered Receipts**. Merchant has good, complete, unencumbered and marketable title to all Receipts and all collateral in which PURCHASER has been granted a security interest under the Security Agreement, free and clear of any and all liabilities, liens, claims, charges, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever other than in favor of PURCHASER or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of PURCHASER, other than any for which PURCHASER has actual or constructive knowledge of as of the date of this Agreement. Merchant shall not enter into any other agreement for the sale of Future Receipts and/or cash advance agreement or financing or factoring agreement absent PURCHASER's advance written consent.

2.11 **Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

2.12 **Change of Name or Location or Sale or Closing of Business**. Merchant will not conduct Merchant's businesses under any name other than as disclosed to PURCHASER or change any of its places of business without prior written consent of PURCHASER. Merchant will not voluntarily sell, dispose, transfer or otherwise voluntarily convey all or substantially all of its business or assets without (i) the express prior written consent of PURCHASER; and (ii) the written agreement of any purchaser or transferee assuming all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to PURCHASER. Except as disclosed to PURCHASER in writing, as of the date of this Agreement, Merchant has no current plans to close its business either temporarily, whether for renovations, repairs or any other purpose, or permanently. PURCHASER will not voluntarily close its business on a temporary basis for renovations, repairs, or any other purposes without consent from PURCHASER. This provision, however, does not prohibit Merchant from closing its business temporarily if such closing is required to conduct renovations or repairs that are required by local ordinance or other legal order, such as from a health or fire inspector, or if otherwise forced to do so by circumstances outside of the control of Merchant. Prior to any such closure, Merchant will provide PURCHASER ten business days' notice to the extent practicable.

2.13 **Accurate and Complete Information**. Merchant represents, warrants, and agrees that all information provided to PURCHASER and all statements made to PURCHASER relating to this transaction in any way have been truthful, accurate, and complete. Merchant further agrees that Merchant will be truthful in all future statements to PURCHASER, and will provide PURCHASER with accurate and complete information regarding Merchant's business as required by this Agreement.

2.14 **Merchant to Pay Taxes Promptly**. Merchant will promptly pay all necessary taxes, including but not limited to employment and sales and use taxes.

2.15 **Good Faith.** Merchant and Guarantor(s) hereby affirm that Merchant is receiving the Purchase Price and selling PURCHASER the Purchased Amount in good faith and will use the Purchase Price funds to maintain and grow Merchant's business.

3   EVENTS OF DEFAULT AND REMEDIES

**3.1  Events of Default**. The occurrence of any of the following events shall constitute an "Event of Default" hereunder:
(a) Merchant violates any term or covenant in this Agreement;
(b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made; and
(c) Merchant fails to provide its bank statements, and/or month to date banking activity within five (5) business days after a request by PURCHASER.

**3.2  Remedies.** Upon the occurrence of an Event of Default, PURCHASER may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Guaranty) or any other legal or equitable right or remedy, including but not limited to filing an action, and enforcing the Security Agreement contained herein. Upon the occurrence of an Event of Default, the Purchased Percentage shall equal 100% and the full undelivered Purchased Amount plus all fees and charges (including legal fees) assessed under this Agreement will become due and payable in full immediately. Subject to arbitration in Section 5, all rights, powers and remedies of PURCHASER in connection with this Agreement may be exercised at any time by PURCHASER after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.3  Attorney's Fees**. Upon the occurrence of an Event of Default, if Purchaser retains an attorney or law firm to enforce this Agreement, Merchant and Guarantor(s) agree that Merchant shall pay PURCHASER's reasonable attorney's fees in the amount of 30% of Purchased Amount that is undelivered as of the date of the Event of Default.

**3.4  Costs**. Merchant shall pay to PURCHASER all reasonable costs associated with (a) an Event or Default, (b) breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and(c) the enforcement of PURCHASER's remedies set forth in this Agreement, including but not limited to collection costs, court costs and reasonable attorneys' fees.

4   MISCELLANEOUS

**4.1  Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by PURCHASER.

**4.2  Assignment.** PURCHASER may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

**4.3  Notices.** Except for Reconciliation requests under Section 1.3 of this Agreement, all notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to PURCHASER shall become effective only upon receipt by PURCHASER. Notices to Merchant shall become effective three days after mailing.

**4.4  D/B/As.** Merchant hereby acknowledges and agrees that PURCHASER may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between PURCHASER and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**4.5  Waiver Remedies.** No failure on the part of PURCHASER to exercise, and no delay in exercising any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. Subject to arbitration in Section 5, the remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**4.6  Binding Effect; Governing Law, Venue and Jurisdiction**. This Agreement, Security Agreement and Guaranty of Performance, and any and all addendums attachments, exhibits, and other documents relating to this Agreement in any way, shall be binding upon and inure to the benefit of Merchant and Guarantor(s) on the one hand, and PURCHASER and their respective successors and assigns, except that Merchant and Guarantor(s) shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of PURCHASER which consent may be withheld in PURCHASER's sole discretion. PURCHASER reserves the rights to



Initial(s):  _____   _____   _____
            Merchant     Guarantor #1    Guarantor #2

Rev.10/2022

3

assign this Agreement with or without prior written notice to Merchant. This Agreement, Security Agreement and Guaranty of Performance, and any and all addendums, attachments, exhibits, and other documents relating to this Agreement in any way, shall be governed by and construed in accordance with the laws of the state of New York and the federal Arbitration Act, without regard to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if PURCHASER so elects, be instituted in any New York State Supreme Court sitting in the State of New York, (the "Acceptable Forums"). All Parties and signatories to this Agreement, including but not limited to, the Merchant and Guarantor(s) agree that the Acceptable Forums are convenient to it, and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to jurisdiction or venue.  Should such proceeding be initiated in any other forum, Merchant and Guarantor(s) waives any right to oppose any motion or application made by PURCHASER to transfer such proceeding to an Acceptable Forum. **Merchant and Guarantor(s) hereby agree that the mailing of any Summons and Complaint in any proceeding commenced by PURCHASER by certified or registered mail, return receipt requested to the Mailing Address listed on this Agreement (or any other addresses provided in writing to PURCHASER), will constitute valid and lawful service of process against them without the necessity for service by any other means provided by statute or rule of court, and such service shall be deemed complete five (5) days after dispatch.**

**4.7** **Survival of Representation**. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**4.8** **Interpretation.** All Parties hereto have had the opportunity to review this Agreement with attorney of their own choosing and have relied only on their own attorneys' guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

**4.9** **Severability.** In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

**4.10** **Entire Agreement.** Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and the Security Agreement and Guaranty of Performance hereto embody the entire agreement between Merchant, Guarantor(s) and Corporate Guarantor(s) and PURCHASER and supersede all prior agreements and understandings relating to the subject matter hereof.

**4.11** **Facsimile & Digital Acceptance.** Facsimile signatures and digital signatures hereon shall be deemed acceptable for all purposes.

**4.12** **JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY THE OPPORTUNITY TO CONSIDER THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

**4.13** **CLASS ACTION WAIVER.** THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

**5. ARBITRATION**

IF PURCHASER, MERCHANT OR ANY GUARANTOR REQUESTS, THE OTHER PARTIES AGREE TO ARBITRATE ALL DISPUTES AND CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT. IF PURCHASER, MERCHANT OR ANY GUARANTOR SEEKS TO HAVE A DISPUTE SETTLED BY ARBITRATION, THAT PARTY MUST FIRST SEND TO ALL OTHER PARTIES, BY CERTIFIED MAIL, A WRITTEN NOTICE OF INTENT TO ARBITRATE. IF PURCHASER, MERCHANT OR ANY GUARANTOR DO NOT REACH AN AGREEMENT TO RESOLVE THE CLAIM WITHIN 30 CALENDAR DAYS AFTER THE NOTICE IS RECEIVED, PURCHASER, MERCHANT OR ANY GUARANTOR MAY COMMENCE AN ARBITRATION PROCEEDING WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR THE FORUM. PURCHASER WILL PROMPTLY REIMBURSE MERCHANT OR THE GUARANTOR FOR ANY ARBITRATION FILING FEE, HOWEVER, IN THE EVENT THAT BOTH MERCHANT AND THE GUARANTOR MUST PAY FILING FEES, PURCHASER WILL ONLY REIMBURSE MERCHANT'S ARBITRATION FILING FEE AND, EXCEPT AS PROVIDED IN THE NEXT SENTENCE, PURCHASER WILL PAY ALL ADMINISTRATION AND ARBITRATOR FEES. IF THE ARBITRATOR FINDS THAT EITHER THE SUBSTANCE OF THE CLAIM RAISED BY MERCHANT OR THE GUARANTOR OR THE RELIEF SOUGHT BY MERCHANT OR THE GUARANTOR IS IMPROPER OR NOT WARRANTED, AS MEASURED BY THE STANDARDS SET FORTH IN FEDERAL RULE OF PROCEDURE 11(B), THEN PURCHASER WILL PAY THESE FEES ONLY IF REQUIRED BY THE AAA OR FORUM RULES. MERCHANT AND THE GUARANTOR AGREE THAT, BY ENTERING INTO THIS AGREEMENT, THEY ARE WAIVING THE RIGHT TO TRIAL BY JURY. PURCHASER, MERCHANT OR ANY GUARANTOR MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. FURTHER, PURCHASER, MERCHANT AND ANY GUARANTOR AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE PROCEEDINGS FOR MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING, AND THAT IF THIS SPECIFIC PROVISION DEALING WITH THE PROHIBITION ON CONSOLIDATED, CLASS OR AGGREGATED CLAIMS IS FOUND UNENFORCEABLE, THEN THE ENTIRETY OF THIS ARBITRATION CLAUSE SHALL BE NULL AND VOID.  THIS AGREEMENT TO ARBITRATE IS GOVERNED BY THE FEDERAL ARBITRATION ACT AND NOT BY ANY STATE LAW REGULATING THE ARBITRATION OF DISPUTES.  THIS AGREEMENT IS FINAL AND BINDING EXCEPT TO THE EXTENT THAT AN APPEAL MAY BE MADE UNDER THE FAA.  ANY ARBITRATION DECISION RENDERED PURSUANT TO THIS ARBITRATION AGREEMENT MAY BE ENFORCED IN ANY COURT WITH JURISDICTION.  THE TERMS "DISPUTES" AND "CLAIMS" SHALL HAVE THE BROADEST POSSIBLE MEANING.

RIGHT TO OPT OUT OF ARBITRATION: MERCHANT AND GUARANTOR(S) MAY OPT OUT OF THE ARBITRATION CLAUSE ABOVE. TO OPT OUT OF THIS ARBITRATION CLAUSE, MERCHANT AND EACH GUARANTOR MUST SEND PURCHASER A NOTICE THAT THE MERCHANT AND EACH GUARANTOR DOES NOT WANT THIS CLAUSE TO APPLY TO THIS AGREEMENT. FOR ANY OPT OUT TO BE EFFECTIVE, MERCHANT AND EACH GUARANTOR MUST SEND AN OPT OUT NOTICE TO THE FOLLOWING ADDRESS BY REGISTERED MAIL, WITHIN 14 CALENDAR DAYS AFTER THE DATE OF THIS AGREEMENT: BYZFUNDER, LLC HEAD OF OPERATIONS, ARBITRATION OPT OUT, 530 7th Ave Suite 505, New York, NY 10018.

**SECURITY AGREEMENT AND GUARANTY OF PERFORMANCE**

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "REVENUE PURCHASE AGREEMENT", INCLUDING THE "MERCHANT AGREEMENT TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY OF PERFORMANCE. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY SHALL HAVE THE MEANING SET FORTH IN THE REVENUE PURCHASE AGREEMENT, INCLUDING THE MERCHANT AGREEMENT TERMS AND CONDITIONS.

| | |
|---|---|
| Merchant's Legal Name: | Bourbon Street LLC |
| D/B/A: | La Cantina Tex-Mex Cuisine    Federal ID#: 86-2751435 |
| Physical Address: | 28 Center Avenue North    City: Mayville    State: ND    Zip: 58257 |

**ACKNOWLEDGMENT OF SECURITY INTEREST AND SECURITY AGREEMENT.** The Future Receipts sold by Merchant to Purchaser pursuant to the Revenue Purchase Agreement shall constitute and shall be construed and treated for all purposes as a true and complete sale, conveying good title to the Future Receipts free and clear of any liens and encumbrances, from Merchant to Purchaser. To the extent the Future Receipts are "accounts" or "payment intangibles" as those terms are defined in the Uniform Commercial Code as in effect in the state in which the Merchant is located ("UCC") then: (i) the sale of the Future Receipts creates a security interest as defined in the UCC; (ii) this Security Agreement constitutes a "security agreement" under the UCC; and (iii) Purchaser has all the rights of a secured party under the UCC with respect to such Future Receipts. Merchant further agrees that, with or without an Event of Default, Purchaser may notify account debtors, or other persons obligated on the Future Receipts, or holding the Future Receipts, of Merchant's sale of the Future Receipts and may instruct them to make payment or otherwise render performance to or for the benefit of Purchaser.

**Negative Pledge**. Merchant and Guarantor(s) each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to the Future Receipts.

**GUARANTY OF PERFORMANCE**

Each Guarantor is an owner of Merchant and is involved in the day-to-day business operations of Merchant. Each Guarantor agrees to irrevocably, absolutely and unconditionally guarantee to Purchaser prompt and complete performance of the following obligations of Merchant (the "Guaranteed Obligations"):

1. Merchant's obligation provide its bank statements, and/or month to date banking activity within five (5) business days after a request by Purchaser,

2. Merchant's obligation to not enter into any other agreement for the sale of Future Receipts and/or cash advance agreement or financing or factoring agreement absent Purchaser's advance written consent.

3. Merchant's obligation to deposit all Future Receipts in the Account and to not revoke authorization for Purchaser to debit the Account or change the Processor, add processing terminals, change its financial institution or bank account(s), without Purchaser's prior written consent.

4. Merchant's obligation to not conduct Merchant's businesses under any name other than as disclosed to the Processor and Purchaser, or change any of its places of business without prior written consent by Purchaser.

5. Merchant's obligation to provide truthful, accurate, and complete information.

**Guarantor(s) Waivers**. Purchaser does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under the Revenue Purchase Agreement and this Personal Guaranty of Performance if it is not notified of: (i) Merchant's failure to timely perform any obligation under the Revenue Purchase Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) Purchaser's acceptance of the Revenue Purchase Agreement; and (iv) any renewal, extension or other modification of the Revenue Purchase Agreement or Merchant's other obligations to Purchaser. In addition, Purchaser may take any of the following actions without releasing Guarantor from any of its obligations under the Revenue Purchase Agreement and this Guaranty of Performance, (i) renew, extend or otherwise modify the Revenue Purchase Agreement or Merchant's other obligations to Purchaser; and (ii) release Merchant from its obligations to Purchaser. Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under the Revenue Purchase Agreement or this Personal Guaranty of Performance. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, or any other guarantor, for any amounts paid by it, or acts performed by it, under the Revenue Purchase Agreement or this Personal Guaranty of Performance: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution.

This Security Agreement and Guaranty of Performance shall be governed by and construed in accordance with the laws of the state of New York, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if Purchaser so elects, be instituted in any state Supreme Court sitting in the State of New York, (the "Acceptable Forums"). Merchant and Guarantor(s) agree that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Merchant and Guarantor(s) agree that the Acceptable Forums are convenient to it, and submit to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant and Guarantor waive any right to oppose any motion or application made by Purchaser to transfer such proceeding to an Acceptable Forum.

The Merchant and Guarantor(s) acknowledge that they have read Section 4.6 of the Revenue Purchase Agreement in its entirety and understand that they are waiving their right to Service of Process by traditional manners and will accept process of any Summons and Complaint or other legal process by certified mail return receipt requested to the Mailing Address on Page 1 of this Agreement (or any other addresses provided in writing to PURCHASER) and that service shall be deemed completed five (5) days after dispatch.

**Guarantor(s) Acknowledgement and Agreement to Class Action Waiver and Arbitration. Guarantor(s) acknowledges that: (i) He/She is bound by the Class Action Waiver and Arbitration provisions in** the Revenue Purchase Agreement**; (ii) He/She understands the seriousness of the Class Action Waiver and Arbitration provisions; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iv) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.**

BYZFUNDER

Initial(s): _MDP_ Merchant    _MDP_ Guarantor #1    _____ Guarantor #2    Rev.10/2022

5

**FOR ALL MERCHANT(S) (#1)** By: _____Mark Douglas Petri, Member_____    _____*[signed]*_____
                                                                  (Print Name and Title)                                               (Signature)

SSN#   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


**FOR ALL MERCHANT(S) (#2)** By: _____    _____
                                                                  (Print Name and Title)                                               (Signature)

SSN#   _____


**GUARANTOR(S) (#1)** By: _____Mark Douglas Petri, Member_____    _____*[signed]*_____
                                                             (Print Name and Title)                                               (Signature)

SSN#   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


**GUARANTOR(S) (#2)** By: _____    _____
                                                             (Print Name and Title)                                               (Signature)

SSN#   _____

BYZFUNDER

Initial(s):  *[MDP]* Merchant    *[MDP]* Guarantor #1    _____ Guarantor #2

Rev.10/2022

6

**APPENDIX A - THE FEE STRUCTURE:**

A. Origination Fee - $900.00 to be deducted from the Purchase Price prior to funding.

B. Processing Fee - $275.00 for the setup and maintenance of the account to be deducted from the Purchase Price prior to funding.

C. NSF Fee (Standard) - $50.00 (each)

D. Default Fee - $2,500.00

E. Bank Change Fee - $50.00 When Merchant requires a change of Bank Account to be debited, requiring us to adjust our system.

**FOR THE MERCHANT(S) (#1)** By: Mark Douglas Petri, Member
(Print Name and Title)                              (Signature)

**FOR THE MERCHANT(S) (#2)** By: 
(Print Name and Title)                              (Signature)



Initial(s): Merchant    Guarantor #1    Guarantor #2

Rev.10/2022

7

**AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)**

Merchant: Mark Douglas Petri
(Merchant's Legal Name)

Merchant Agreement: Merchant Agreement between Purchaser and Merchant, dated as of   07/21/2023

**Designated Checking Account:**

Bank Name: CHOICE FINANCIAL GROUP / BANKNORTH          Branch:

Tax ID: 86-2751435

ABA: Routing: 091302966 / 091305044          DDA: Account: 130006802 / 34886901

Capitalized terms used in this Authorization Agreement without definition shall have the meanings set forth in the Merchant Agreement.

By signing below, Merchant attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes. **This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the Merchant Agreement. Merchant should keep a copy of this important legal document for Merchant's records.**

**DISBURSEMENT OF ADVANCE PROCEEDS**. By signing below, Merchant authorizes Purchaser to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating ACH credits to the Designated Checking Account, in the amounts and at the times specified in the Merchant Agreement. **By signing below, Merchant also authorizes Purchaser to collect amounts due from Merchant under the Merchant Agreement by initiating ACH debits to the Designated Checking Account, as follows:**

   In the initial amount of: $1,284.38

   (Or) Percentage of each Banking Deposit: 3.00%

   On the Following Days: weekly

If any payment date falls on a weekend or holiday, I understand and agree that the payment may be executed on the next business day. If a payment is rejected by Merchant's financial institution for any reason, including without limitation insufficient funds, Merchant understands that Purchaser may, at its discretion, attempt to process the payment again as permitted under applicable ACH rules. Merchant also authorizes Purchaser to initiate ACH entries to correct any erroneous payment transaction.

**MISCELLANEOUS**. Purchaser is not responsible for any fees charged by Merchant's bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH debits and credits to the Designated Checking Account must comply with applicable provisions of state and federal law, and the rules and operating guidelines of NACHA (formerly known as the National Automated Clearing House Association). This Authorization Agreement is to remain in full force and effect until Purchaser has received written notification from Merchant at the address set forth below at least 5 banking days' prior of its termination to afford Purchaser a reasonable opportunity to act on it. The individual signing below on behalf of Merchant certifies that he/she is an authorized signer on the Designated Checking Account. Merchant will not dispute any ACH transaction initiated pursuant to this Authorization Agreement, provided the transaction corresponds to the terms of this Authorization Agreement. Merchant requests the financial institution that holds the Designated Checking Account to honor all ACH entries initiated in accordance with this Authorization Agreement.

Merchant: Mark Douglas Petri          Date: 21st day of July 2023
(Merchant's Legal Name)                  (Month) (Day) (Year)

Title: Member
(Title)

X: _[Signature]_
(Signature)

Name: Mark Douglas Petri
(Print Name)

BYZFUNDER          Initial(s):  Merchant   _[initials]_ Guarantor #1   Guarantor #2          Rev.10/2022

## WAIVER OF PERSONAL SERVICE OF PROCESS

This Addendum ("Addendum") is to be made a part of purchase and sale of future receivables agreement (the "Contract") between <u>Byzfunder NY LLC DBA Byzfunder</u>("Purchaser") and <u>Bourbon Street LLC</u> ("Merchant") and <u>Mark Douglas Petri</u> ("Guarantor") (collectively the "Parties") dated <u>07/21/2023.</u>

1. **Merchant** hereby irrevocably and unconditionally waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by New York law.  Merchant understands and agrees that an action, lawsuit, or controversy may be taken up and considered by a court without any further notice. Merchant further agrees to waive any objection to the absence of formal service of process.

2. **Guarantor** hereby irrevocably and unconditionally waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by New York law.  Guarantor understands and agrees that an action, lawsuit, or controversy may be taken up and considered by a court without any further notice.  Guarantor further agrees to waive any objection to the absence of formal service of process.

3. MERCHANT HEREBY AGREES TO ACCEPT SERVICE OF ANY SUMMONS, COMPLAINT, OR OTHER PROCESS BY UNITED STATES POSTAL SERVICE CERTIFIED MAIL AT THE ADDRESS LISTED ON THE CONTRACT OR BY ANY OTHER MEANS PERMITTED BY NEW YORK LAW AND THAT SUCH SERVICE SHALL BE DEEMED COMPLETE 5 DAYS AFTER DISPATCH.

4. GUARANTOR HEREBY AGREES TO ACCEPT SERVICE OF ANY SUMMONS, COMPLAINT, OR OTHER PROCESS BY UNITED STATES POSTAL SERVICE CERTIFIED MAIL AT THE ADDRESS LISTED ON THE CONTRACT OR BY ANY OTHER MEANS PERMITTED BY NEW YORK LAW AND THAT SUCH SERVICE SHALL BE DEEMED COMPLETE 5 DAYS AFTER DISPATCH.

5. Merchant or Guarantor shall notify Merchant of any changes to its physical address or email address for service. Unless Merchant is notified of a change in address, all addresses shall be presumed to be accurate.

6. This Addendum shall supersede any notice requirements in the Contract with respect to service of process.

**FOR THE MERCHANT** By: _____Mark Douglas Petri, Member_____   _____(Signature)_____
(Print Name and Title)

**DATE:**   **07/21/2023**

**BY GUARANTOR** By: _____Mark Douglas Petri, Member_____   _____(Signature)_____
(Print Name and Title)

**DATE:**   **07/21/2023**

Initial(s): ___Merchant___  ___Guarantor #1___  ___Guarantor #2___

Rev.10/2022

9

**EXCEPTIONAL DELIVERY OF PURCHASED AMOUNT ADDENDUM**

This is an addendum to the Revenue Purchase Agreement and Security Agreement and Guaranty of Performance ("Agreement") dated 07/21/2023, by and between Byzfunder NY LLC DBA Byzfunder ("Purchaser") Bourbon Street LLC ("Merchant") and Mark Douglas Petri ("Guarantor").

• Purchaser agrees to discount the Purchased Amount indicated on page 1 of the agreement as follows:

| REVENUE DELIVERY DATE | TOTAL PURCHASED AMOUNT |
|---|---|
| 0-30 CALENDAR DAYS AFTER FUNDING DATE | $36,600.00 |
| 31-60 CALENDAR DAYS AFTER FUNDING DATE | $38,100.00 |
| 61-90 CALENDAR DAYS AFTER FUNDING DATE | $39,600.00 |

• Payoff must originate from the business checking account on file and cannot be paid via a third party.

• If an "Event of Default" occurs under Section 3.1 of the agreement than this discounted purchased amount shall be rendered null and void and the Merchant shall be responsible for the full purchased amount as shown on page 1 of the "Agreement."

**FOR THE MERCHANT** By: Mark Douglas Petri, Member
(Print Name and Title)   (Signature)

**DATE:** 07/21/2023

**BY GUARANTOR** By: Mark Douglas Petri, Member
(Print Name and Title)   (Signature)

**DATE:** 07/21/2023

Initial(s):  Merchant   Guarantor #1   Guarantor #2

Rev.10/2022

BYZFUNDER

10